**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**WILLIE F. WRIGHT, JR. and,**
**TIFFANI A. BLASH,**

**Plaintiffs,**

**v.**

**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, et al.,**

**Defendants.**

**CIVIL ACTION NO. 5:25-cv-503 (MTT)**

## ORDER

Plaintiffs, Willie F. Wright, Jr. and Tiffani A. Blash, allege that Defendants, Christopher Connolly, Marvin Dikeman, and Allstate Vehicle and Property Insurance Company ("Allstate"), intentionally discriminated against them based on their race, causing contractual injury in violation of 42 U.S.C. § 1981. ECF 57 at 4–11. They also assert a fraud claim under Georgia law against Defendant Dikeman. *Id*. at 11–15. Defendants move to dismiss. ECF 58; 59. For the reasons explained below, Defendants Connolly and Allstate's motion to dismiss (ECF 59) is **DENIED**. Defendant Dikeman's motion to dismiss (ECF 58) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

After suffering a property theft, Plaintiffs filed an insurance claim with Allstate on December 5, 2023. ECF 57 at 2, 3 ¶ 1. Defendant Connolly was the Allstate employee

[1] The Court takes the following facts from the well-pleaded allegations in the third amended complaint, construing all reasonable inferences in the light most favorable to Plaintiffs. *See FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011).

assigned to Plaintiffs' claim. *Id.* at 4 ¶ 1. Plaintiffs received proof of loss forms on January 10, 2024, and Plaintiffs returned them to Allstate on January 25, 2024. *Id.* at 3 ¶¶ 2, 3. Upon receiving the proof of loss forms, Connolly did not immediately enter the forms into Plaintiffs' record. *Id.* at 4 ¶ 3. Consequently, when Connolly went on vacation, other adjusters were unable to address Plaintiffs' claim. *Id.* Plaintiff Wright called Allstate and spoke with other adjusters while Connolly was on vacation. *Id.* at 4 ¶ 4. The other adjusters told Wright that Connolly had failed to update the file to reflect receipt of the proof of loss forms and that they had never seen a property claim handled this way. *Id.*

On February 5, 2024, after Connolly returned from vacation, Wright called Connolly to discuss the status of his claim and to confront Connolly about his failure to properly update Plaintiffs' file. *Id.* at 4 ¶¶ 1–6. During the call, Connolly allegedly stated, "If you had a saltire with 13 stars on it[,] your claims would not have been so difficult to resolve." *Id.* at 4 ¶ 6. Wright, who is Black, later understood that Connolly's comment related to his race.[2] *Id.* at 4 ¶ 7, 5 ¶ 14. Wright filed a complaint concerning Connolly's statement with Allstate. *Id.* 4 ¶ 7. Allstate discussed the complaint with Wright, and Connolly denied that he made the comment. *Id.* at 5 ¶ 10. Wright told Allstate that Plaintiffs would file suit for the racial comment and related claims-handling conduct if the matter was not addressed. *Id.* at 4 ¶ 9. Allstate management stated they intended to retain an attorney to ensure compliance with Georgia's claims-handling statutes, and hired Defendant Dikeman in late February 2024. *Id.* at 3 ¶ 7, 5 ¶ 11.

---

[2] A saltire, or diagonal cross, with thirteen stars refers to the Confederate battle flag.

On March 6, Dikeman and Wright spoke on the phone. *Id.* at 8 ¶ 2. Wright had attended his father's funeral that day and faced "car problems, problems with [his] daughter, housing problems, dog problems, [and] medical problems." *Id.* Dikeman told Wright that Plaintiffs were required to appear for an examination under oath ("EUO") and that attendance was mandatory. *Id.* at 8 ¶ 4. Dikeman told Plaintiffs they had to attend the EUO at his office in Atlanta. *Id.* at 8 ¶ 4–6. Plaintiffs lived in Macon and asked if Dikeman could conduct the EUO there, or alternatively, by video conference. *Id.* at 8 ¶¶ 7, 8. Dikeman insisted on conducting the EUO in Atlanta at his law office. *Id.* at 8 ¶ 9. The conversation escalated, and Wright told Dikeman he would file a bar complaint. *Id*. Dikeman responded, "I don't give a f*ck what you do[.] Good luck with that." *Id.* Believing the call was disconnected, Dikeman allegedly then said, "I hate those f*cking n*ggers thinking I'm coming to them, f*ck that." *Id.* at 9 ¶ 10. Wright confronted Dikeman about the statement. *Id.* at 9 ¶ 11. Dikeman responded, "I didn't say anything," and the call disconnected. *Id.*

On March 25, 2024, Plaintiffs called Allstate and demanded payment on the claim. *Id.* at 3 ¶ 9. On March 27, Allstate's adjuster sent an email stating the claim remained under investigation. *Id.* at 3 ¶ 10. That same day, Dikeman sent an email demanding that Plaintiffs appear for an EUO on April 12, 2024. *Id.* at 3 ¶ 11. On March 29, 2024, Wright responded by email that Plaintiffs were unavailable on April 12, 2024, but would be available on May 31, 2024. *Id.* at 3 ¶ 12. Dikeman insisted that the EUO proceed on April 12, 2024, and did not propose an alternative date or a location closer to where Plaintiffs lived. *Id.* at 9 ¶ 16. Dikeman proceeded with the EUO on April 12, 2024. *Id.* at 11 ¶¶ 1, 3. The court reporter issued a certificate reflecting Plaintiffs' non-

appearance. *Id.* at 12 ¶¶ 5–6. Plaintiff alleges Dikeman sought the “certificate of no show” to provide Allstate a basis for denying Plaintiffs’ insurance claim, but Plaintiffs also allege the insurance claim remains unresolved. *Id.* at 5 ¶ 14, 6 ¶ 16, 10 ¶ 23, 12 ¶ 5.

Plaintiffs filed suit in the Northern District of Illinois against Allstate, alleging breach of contract and discrimination based on race in February 2024. ECF 1. The case was transferred to the Middle District of Georgia in November 2025, and the Court ordered Plaintiffs to amend their complaint to allege facts supporting federal subject matter jurisdiction. ECF 36; 41. Allstate moved to dismiss, arguing Plaintiffs failed to submit to an examination under oath. ECF 45. Plaintiffs' second amended complaint did not adequately comply with the Court’s order, however, so the Court afforded Plaintiffs an opportunity to file a third amended complaint and denied the motion to dismiss as moot. ECF 53.

Plaintiffs’ third amended complaint no longer asserts a breach of contract claim against Allstate. ECF 57. Instead, it asserts claims under 42 U.S.C. § 1981 against Allstate, Connolly, and Dikeman, and a fraud claim under Georgia law against Dikeman. *Id.* Defendants move to dismiss for failure to state a claim. ECF 58; 59. Plaintiffs responded, and now move for leave to file a fourth amended complaint and for sanctions. ECF 63; 65; 66; 72.

## II. STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to “‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Moreover, pleadings by *pro se* litigants "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation modified). Even so, "the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (citation modified). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION

As an initial matter, the parties refer to facts and attach exhibits beyond the allegations in the third amended complaint in support of their briefs on the motions to dismiss. *See* ECF 58; 65; 66. "'[A] judge need not convert a motion to dismiss into a

motion for summary judgment as long as he or she does not consider matters outside the pleadings.'" *Hagan v. Comm'r, Georgia Dep't of Corr.*, 2023 WL 5621895, at *5 (11th Cir. 2023) (quoting *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010)). The Court does not consider matters outside the pleadings and does not convert the motions to dismiss into motions for summary judgment.[3]

**A. Section 1981 Claims**

"All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim under § 1981, Plaintiffs "must allege (1) intentional racial discrimination (2) that caused a contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). "A contractual injury includes any injury relating to 'the making, performance, modification, [or] termination of [the] contract[ ],' or to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)).

A plaintiff may establish racial discrimination directly or circumstantially. *Id.* at 1296. "To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Id.* (quoting *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007)). "A § 1981 plaintiff seeking to prove racial discrimination by circumstantial evidence may proceed under the *McDonnell Douglas* burden-shifting framework." *Id.* To plausibly allege causation, Plaintiffs must plead "that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v.*

[3] However, the Court has reviewed those extrinsic exhibits. Some are concerning and will be addressed when appropriate.

*Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). "Under but-for causation statutes, like § 1981, [the Court] ask[s] whether the discriminatory conduct had a 'determinative influence' on the injury." *Ziyadat*, 3 F.4th at 1297–98 (quoting *Sims v. MVM, Inc.*, 704 F.3d 1327, 1336 (11th Cir. 2013)).

Defendants argue the third amended complaint fails to plausibly allege § 1981 claims because it does not "plead or prove the existence of a valid and binding contract," and consequently, does not allege that Defendants caused Plaintiffs' contractual injury. ECF 58-1 at 8; 59-1 at 7. But the third amended complaint is entirely premised on the existence of an insurance contract between Plaintiffs and Defendants, and it specifically alleges the existence of an insurance contract. ECF 57 at 3 ¶ 14, 10 ¶ 25, 13 ¶ 11. The third amended complaint also alleges that, when Plaintiffs attempted to pursue their contractual rights by filing an insurance claim, Defendants delayed the claims process and failed to work with Plaintiffs to schedule an EUO, leaving the claim indefinitely unresolved. *Id.* at 3–13. These allegations are sufficient to plausibly allege contractual injury.[4]

In addition, the third amended complaint plausibly alleges that, but for Plaintiffs' race, Defendants would not have delayed the contractual process or refused to accommodate Plaintiffs in scheduling an EUO. According to the third amended complaint, Connolly, the Allstate adjuster assigned to Plaintiffs' claim, delayed updating

---

[4] Defendants argue Plaintiffs must provide more detailed information concerning their contractual relationship with Allstate and that the Court must examine the "metes and bounds" of the contract to determine whether Plaintiffs state a § 1981 claim. ECF 58-1 at 8–9; 59-1 at 7. In support, Plaintiffs cite *Kinnon*, 490 F.3d at 892. *Id.* In *Kinnon*, the Eleventh Circuit affirmed the district court's grant of summary judgment where the plaintiff did not introduce evidence showing she was denied a contractual right. 490 F.3d at 892, 894. Although the defendant made a discriminatory remark during the contractual process, the plaintiff successfully pursued her contractual rights. *Id.* In contrast, Plaintiffs here allege their insurance claim has yet to be processed contrary to their contractual rights. ECF 57 at 5 ¶ 14, 6 ¶ 16, 10 ¶ 23.

Plaintiffs' insurance file with proof of loss forms, preventing Plaintiffs from pursuing their claim while Connolly was on vacation. *Id.* at 4 ¶¶ 3, 4. Plaintiffs inquired about the delay with Allstate, and other adjusters told Plaintiffs they had never seen a property claim handled like this before. *Id.* at 4 ¶ 4. Plaintiffs confronted Connolly about the delay, and Connolly stated, "[i]f you had a saltire with 13 stars on it[,] your claims would not have been so difficult to resolve," plausibly alleging Connolly delayed the claims handling process because of Plaintiffs' race. *Id.* at 4 ¶ 6.

Similarly, the third amended complaint alleges Dikeman refused to accommodate Plaintiffs in scheduling an EUO because of their race. *Id.* at 9 ¶ 10. It alleges that Dikeman made a comment using a racial slur after he thought the phone line had disconnected following a conversation with Wright: "I hate those f*cking n*ggers thinking I'm coming to them, f*ck that," plausibly alleging that race was a determinative factor in Dikeman's failure to accommodate Plaintiffs. *Id.* at 9 ¶ 10. To be sure, "[s]ection 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process." *Kinnon*, 490 F.3d at 892. But Plaintiffs here allege more than harassment in the contracting process; Plaintiffs allege they were unable to pursue an insurance claim pursuant to a contract they held with Allstate because of Defendants' racially motivated delay tactics and refusal to accommodate Plaintiffs in scheduling an EUO.[5]

[5] Dikeman points to evidence beyond the four corners of the third amended complaint to argue that Plaintiffs' own conduct ultimately resulted in their inability to seek recovery. ECF 67. For example, Dikeman argues that Plaintiffs materially breached the insurance contract before Dikeman attempted to schedule an EUO with Plaintiffs; thus, Dikeman's failure to accommodate did not cause Plaintiffs' contractual injury. *Id.* at 6. But Dikeman has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), not for summary judgment. ECF 58. The Court does not consider facts outside the third amended complaint in resolving Defendants' motions to dismiss.

Defendants Connolly and Allstate's motion to dismiss the third amended complaint (ECF 59) is **DENIED**.

Dikeman's motion to dismiss (ECF 58) is **DENIED** as to the § 1981 claim.

### B. Fraud under Georgia Law

To state a claim for fraud under Georgia law, a plaintiff must allege facts showing "that the defendants knowingly made false statements; that they intended for the plaintiffs to act or refrain from acting in reliance on those statements; that the plaintiffs justifiably relied on the false statements; and as a result of their reliance, the plaintiffs suffered damage."[6] *Wylie v. Denton*, 323 Ga. App. 161, 168, 746 S.E.2d 689, 695 (2013). Plaintiffs assert that Dikeman scheduled an EUO for a date when he knew Plaintiffs could not attend and fraudulently told a court reporter that Plaintiffs had agreed to attend, resulting in a certificate of no show. ECF 57 at 11–12. Plaintiffs do not allege that Dikeman made false statements intending Plaintiffs to act or refrain from acting in reliance on them, or that Plaintiffs justifiably relied on them, however. *See* ECF 57. Rather, the third amended complaint alleges Dikeman "demand[ed]" that Plaintiffs "come to an EUO in Atlanta" on April 12, 2024. *Id.* at 11 ¶ 2. It does not allege that Dikeman agreed to change the date after Plaintiffs informed Dikeman they could not attend on April 12. *Id.* at 11 ¶¶ 2, 3. Plaintiffs' failure to appear was thus not the result of a misrepresentation by Dikeman, and Plaintiffs have not shown they suffered damages as a result of their own reliance on false representations as required to show fraud under Georgia law. *See Fortson v. Hotard*, 299 Ga. App. 800, 803, 684 S.E.2d 18, 21

---

[6] Plaintiffs cite a host of statutory provisions pertaining to fraud under Georgia law, which somewhat obfuscate the legal basis for Plaintiffs' claim. ECF 57 at 13–15. For example, Plaintiffs cite statutes relating to claims in equity based on fraud under Georgia law, although Plaintiffs do not seek equitable relief. *Id.*

(2009) ("[B]ecause [Plaintiff's] pleading shows on its face that he was not damaged as a result of his own reliance on any false misrepresentation . . . his fraud claim fails and was properly dismissed by the trial court.").

Dikeman's motion to dismiss (ECF 58) is **GRANTED** as to Plaintiffs' fraud claim, and the claim is **DISMISSED without prejudice**.

### C. Motion to Amend

Plaintiffs move for leave to amend the third amended complaint. ECF 63. Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

The Court twice ordered Plaintiffs to amend the complaint. ECF 41; 53. In the Court's second order to amend, the Court provided Plaintiffs with specific instructions regarding amendment, and informed Plaintiffs that this was their "final opportunity to amend." ECF 53 at 1. To the extent the third amended complaint still fails to cure deficiencies, the Court need not allow amendment. *See Bryant*, 252 F.3d at 1163. In addition, amendment would be futile. Plaintiffs' proposed fourth amended complaint

does not plausibly allege facts stating a claim for fraud under Georgia law for the same reasons the third amended complaint fails to state a fraud claim. *See* ECF 63-1.

Accordingly, Plaintiffs' motion for leave to amend (ECF 63) is **DENIED**.

**D. Motion for Sanctions**

Plaintiffs move for sanctions, arguing Dikeman misrepresented a fact in a footnote in his reply addressing Plaintiffs' response to his motion to dismiss. ECF 72 at 1. The footnote states that "[t]he record in this case establishes that Dikeman spoke with Plaintiff Willie Wright just one time; a fifteen (15) second phone call that occurred late in the day on March 6, 2024." ECF 67 at 6 n.13. The reply also states that Plaintiffs failed to appear for EUOs twice, which Plaintiffs deny. *Id.* at 5; 72 at 2. Plaintiffs request that these portions of the reply be stricken and also ask for monetary penalties, litigation expenses, and a referral to the State Bar of Georgia for disciplinary investigation. ECF 72 at 3. In response, Dikeman states that Plaintiffs' motion "opens the door for a discussion of the facts of this case that is much broader than permitted in the context of a Motion to Dismiss" and argues Plaintiffs fabricated the discrimination claim against him and are attempting to threaten and extort Defendants.[7] ECF 73 at 2, 7, 12–13.

As discussed, the Court will not consider matters outside the pleadings in resolving Defendants' motions to dismiss. Consequently, the Court does not consider Defendants' reply brief statements identified in Plaintiffs' motion for sanctions in resolving the motions to dismiss. Based on the third amended complaint alone, Plaintiffs' § 1981 claims may proceed, but nothing in this order prevents Defendants from arguing Plaintiffs' claims fail in a motion for summary judgment. If, in a motion for

[7] The Court has previously informed Plaintiffs of their obligations under Rule 11 of the Federal Rules of Civil Procedure, which governs Plaintiffs' representations to the Court. ECF 53 at 5–6; Fed. R. Civ. P. 11.

summary judgment, Defendants provide an alternative account of the events giving rise to Plaintiffs' claim, that alone is not grounds for a sanctions motion.

The motion for sanctions (ECF 72) is **DENIED**.

## IV. CONCLUSION

Defendants Connolly and Allstate's motion to dismiss (ECF 59) is **DENIED**.

Defendant Dikeman's motion to dismiss (ECF 58) is **DENIED in part** and **GRANTED in part**. Plaintiffs' § 1981 claim may proceed for further factual development. Plaintiffs' fraud claim under Georgia law is **DISMISSED without prejudice**.[8]

Plaintiffs' motion to file a fourth amended complaint (ECF 63) is **DENIED**.

Plaintiffs' motion for sanctions (ECF 72) is **DENIED**, but the Court does not consider Defendants' factual assertions that fall outside the scope of the third amended complaint in resolving the motions to dismiss.

**SO ORDERED,** this 6th day of August, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

[8] The Court assumes Dikeman will withdraw as counsel for Defendants. Regardless, the Court **ORDERS** that there will be no further communications between Plaintiffs and defense counsel except between 9:00 a.m. and 5:00 p.m., Monday through Friday, excluding holidays.